IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DAVID WIDENER,

          Plaintiff,

v.                              CIVIL ACTION NO.   2:13-cv-20648

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff David Widener's Complaint seeking review of the decision of the Acting Commissioner of Social Security ("Commissioner") [ECF 2]. By Standing Order entered April 8, 2013, and filed in this case on July 24, 2013, this action was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings and a recommendation ("PF&R"). Magistrate Judge VanDervort filed his PF&R [ECF 14] on August 22, 2014, recommending that this Court deny Plaintiff's motion for judgment on the pleadings [ECF 10, 11, 12], grant Defendant's motion for judgment on the pleadings [ECF 13], affirm the final decision of the Commissioner, and dismiss this matter from the Court's docket.

Pursuant to Rule 72(b)(3) of the Federal Rules of Civil Procedure, the Court must determine de novo any part of a magistrate judge's disposition to which a proper objection has been made. The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Failure to file

timely objections constitutes a waiver of de novo review and the Petitioner's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); *see also Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F .2d 91, 94 (4th Cir. 1984). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

Plaintiff filed timely objections to the PF&R on September 3, 2014. Plaintiff makes two specific objections to the PF&R. (ECF 14.) For the reasons that follow, the Court **OVERRULES** each of Plaintiff's objections.

## I. LEGAL STANDARD

When reviewing final decisions issued by the Commissioner of Social Security, the Court's authority is constrained. "The findings of the Commissioner . . . if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "consists of more than a mere scintilla . . . but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citation omitted). "The courts are not to try the case de novo." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). Courts, however, must scrutinize the record as a whole to determine whether the conclusions reached are rational. *Id.* But courts may not reassess conflicting evidence, determine credibility, or substitute its judgment for that of the Commissioner. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). Should conflicting evidence of disability exist, such that "reasonable minds" could reach inconsistent conclusions, the court must defer to the Commissioner. *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Thus, regardless of whether

the reviewing court concurs, the conclusions of the administrative law judge must be upheld if supported by substantial evidence and derived from proper application of the law. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972)).

## II. DISCUSSION

### A. *Plaintiff's first objection*

Plaintiff first asserts that the magistrate judge erred in finding that the Administrative Law Judge ("ALJ") "properly found that [Plaintiff] was not limited as alleged and that the [residual functional capacity ("RFC")] assessment was supported by substantial evidence." (ECF 15 at 1.) Plaintiff claims the ALJ failed to include any upper spine, shoulder, and extremity limitations in the RFC assessment. *Id.* The ALJ, after finding that Plaintiff was able to perform "light exertional work," determined that Plaintiff could perform five specific jobs.[1] Plaintiff contends that, had the ALJ included upper spine, shoulder, and extremity limitations in the RFC, four of these five occupations would have been "ruled out." (ECF 15 at 1.). These four jobs were: (1) parking lot attendant; (2) gatekeeper; (3) garment folder; and (4) price marker. (ECF 9–2 at 32.) Plaintiff states that these jobs required frequent or constant reaching, handling, and fingering. (ECF 15 at 1.) Plaintiff points to specific medical evidence in the record, argues that his testimony and his reports of subjective symptoms were consistent with this medical evidence, and argues that his activities "were not inconsistent with a limitation to 'occasional' use of the upper extremities." *Id*. at 2. Plaintiff claims that ALJ erred by failing to ascribe an "occasional" use

---

[1] The five-step sequential evaluation process used in making the disability determination is set forth in the PF&R. *See* ECF 14 at 2–3.

3

limitation and this error resulted in the allegedly erroneous finding that Plaintiff was able to perform of four of the five jobs noted in the step five determination.

The sole issue before the Court is whether the ALJ's decision denying Plaintiff's claim for income and benefits is supported by substantial evidence. *See* 45 U.S.C.A. § 405(g). In rendering his sixteen-page decision, ALJ John W. Rolph engaged in the five-step sequential evaluation process for determining whether Plaintiff was disabled within the meaning of the Social Security regulations. (ECF 9–2 at 18–33.) The decision contained a thorough recitation of the medical evidence, Plaintiff's testimony, and the testimony of the vocational expert. (*Id*. at 21–31.) ALJ Rolph found that Plaintiff had a variety of severe impairments under the regulations. (*Id*. at 21.) ALJ Rolph found, however, that Plaintiff had the residual functional capacity (with certain stated restrictions) to perform unskilled "light work," as that phrase is defined under the regulations. (*Id*. at 23.)

The Court is mindful that "substantial evidence" must be more than a scintilla of evidence but can be somewhat less than a preponderance of the evidence. *Craig*, 76 F.3d at 589. Also, the Court may not reassess conflicting evidence, determine credibility, or substitute its judgment for that of the Commissioner. *Id.* Even if this Court were to find that any conflicting evidence of disability exists and that "reasonable minds" could reach inconsistent conclusions, the Court must nonetheless defer to the Commissioner.

The decision of the Commissioner that Plaintiff was able to perform unskilled light work––and, specifically, the occupations of parking lot attendant, gatekeeper, garment folder, and price marker—is supported by substantial evidence and was a determination made by application of the correct legal standards. In support of his contention, Plaintiff cites his own testimony and

4

subjective reports of pain. The Social Security Administration regulations set forth detailed procedures for evaluating alleged symptoms, including pain. See 20 C.F.R. §§ 404.1529, § 416.929 (2011). When determining the credibility of various statements, "the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96–7p, 1996 WL 374186, at *1 (July 2, 1996). The decision must contain specific reasons for the finding on credibility. *Id*. at *2.

In this case, the ALJ refused to fully credit the plaintiff's statements regarding the extent of his symptoms. (ECF 9–2 at 24). ALJ Rolph found Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms was "not credible to the extent they are inconsistent" with the RFC assessment. *Id*. at 24. ALJ Rolph discounted Plaintiff's testimony in this regard and gave detailed reasons for this adverse credibility determination. (ECF 9–2 at 24–31.)

ALJ Rolph contrasted Plaintiff's testimony with evidence contained in the medical record. *Id*. at 24–31. ALJ Rolph found that the objective medical evidence in the record did not support "the extreme limitations" alleged by Plaintiff. *Id.* at 26. With respect to Plaintiff's specific objection to the PF&R, ALJ Rolph noted that Plaintiff alleged "significant musculoskeletal problems" and testified to "extreme pain and limitations involving the neck, low back, shoulders, [and] the area between the shoulder blades, knees and ankles." *Id.* at 26. In contrast to Plaintiff's allegation of debilitation because of his knee, the ALJ noted that recent x-rays of

5

Plaintiff's knee were normal and a medical evaluation by an evaluating physician showed no swelling, effusion, erythema, that Plaintiff had a full range of motion, and alignment of his knees was normal, although tenderness was noted on palpation of Plaintiff's knees. *Id.* In contrast to Plaintiff's claims of debilitation on account of upper spine, shoulder, and extremity conditions, the ALJ noted the medical evidence showed that Plaintiff was able to get off of the exam table of one of the evaluating physicians "without difficulty," a musculoskeletal examination showed normal range of motion," "upper and lower muscle strength was 4/5 when documented in the [physician's] report; however, 3/5 bilaterally as documented on the range of motion sheet," "fine manipulation was normal," and Plaintiff could fully extend his hands and "make a fist and oppose fingers bilaterally." *Id.* Although a spinal x-ray noted that there was "diffuse anterior ossification of the interior and longitudinal ligament highly compatible with DISH, the ALJ correctly noted that Plaintiff had never been definitively diagnosed with DISH.[2] *Id*. at 26.

      The ALJ also noted that in light of Plaintiff's allegations of "such significant problems," a greater degree of treatment would be expected but that had not occurred. *Id.* at 28. The ALJ found that Plaintiff "greatly minimized" his activities of daily living. *Id.* It is not this Court's role to disturb this credibility determination. The ALJ also noted that, while Plaintiff's "mental health evaluation suggests borderline functioning . . . [Plaintiff] had the functional capacity to learn and engage in skilled work as a truck driver and butcher." *Id.* at 29. To the extent that

---

[2] Diffuse idiopathic skeletal hyperostosis is calcification or a bony hardening of ligaments in areas where they attach to the spine. Also known as Forestier's disease, DISH may cause no symptoms and require no treatment. The most common symptoms are mild to moderate pain and stiffness in the upper back. DISH may also affect the neck and lower back. Some people experience DISH in other areas, such as shoulders, elbows, knees and heels. DISH can be progressive. As it worsens, DISH can cause serious complications.

http://www.mayoclinic.org/diseases-conditions/diffuse-idiopathic-skeletal-hyperostosis/basics/definition/con-20024713

6

Plaintiff's objection is grounded in the view that the record contained conflicting evidence regarding his alleged pain in his shoulder, upper spine, and extremity limitations, it is not this Court's role to reassess such evidence. Based on the record, the ALJ's decision is supported by substantial evidence and his analysis complies with the relevant regulations and rulings.

The Court notes that the ALJ appears to have erred in one factual matter. The ALJ noted a report of an orthopedic examination on January 24, 2012. *Id.* at 27. The ALJ stated that this examination "was completed the day after the hearing." *Id.* The date of the hearing before the ALJ, however, was February 23, 2012. *Id.* at 18. Thus, the orthopedic examination appears to have occurred a month before the hearing before the ALJ. The ALJ stated that "in reviewing the entire record, the undersigned found no prior complaints of shoulder pain or pain between the shoulder blades until the hearing." *Id.* at 27.

Although this statement is erroneous, it does not affect the Court's determination that the Commissioner's decision is supported by substantial evidence. "Errors are harmless in social security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error. *See Austin v. Astrue*, 2007 WL 3070601, *6 (W.D. Va. Oct.18, 2007) (citing *Camp v. Massanari*, 22 Fed. App'x. 311 (4th Cir. 2001)) (citing *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000)). The January 24, 2012, orthopedic report states: "45 year old male who presents today as a new patient referred by Dr. Carter with complaints of low back pain and pain between his shoulder blades for several years. He says he has had the pain for about 12 years now. The pain has gotten worse these past few years." *Id.* The ALJ noted that the record did not contain any "prior complaints of shoulder pain or pain between the shoulder blades until the hearing." (*Id.*) Because Plaintiff's orthopedic examination occurred a month before the hearing,

the ALJ's statement is in error. Notwithstanding this error, this error would not have changed the Commissioner's decision because of the evidentiary support in the record that Plaintiff was able to perform work in the designated occupations.

Accordingly, for the reasons stated herein, substantial evidence supports the ALJ's determination that Plaintiff is able to work as parking lot attendant, gatekeeper, garment folder; and price marker, and the Court **OVERRULES** Plaintiff's first objection.

### B. *Plaintiff's second objection*

Plaintiff's second objection to the PF&R is that substantial evidence does not support the ALJ's determination that Plaintiff was able to perform work as a security monitor. (ECF 9–3 at 9–3.) Plaintiff states that he had argued in his brief that under pertinent regulations the "job of surveillance system operator could not be performed" because this occupation required reasoning and language levels above Plaintiff's mental capacity. (ECF 15 at 3.) Plaintiff faults the magistrate judge for determining that, if the ALJ erred in finding that Plaintiff was capable of working as a surveillance system operator, any such presumed error was harmless.

The vocational expert opined at the administrative hearing that Plaintiff was able to perform work as a security monitor. (ECF 9–3 at 54.) The vocational expert relied on The Dictionary of Occupational Titles ("DOT") in making this determination. The DOT is a reference that the Department of Labor publishes listing and describing various jobs, and the regulations authorize its use in the disability review process. *Guiton v. Colvin*, 546 F. App'x 137, 140 n. 5 (4th Cir. 2013) (citing 20 C.F.R. § 404.1566(d)).

The vocational expert noted that the pertinent reference for a security monitor under the DOT is 379.367–010. This job requires a "Reasoning Level" of 3. DOT § 379.367–010. The

DOT defines Level 3 reasoning as the ability to apply "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." DOT, App. C. III. Language Level 3 for reading provides: "Read a variety of novels, magazines, atlases, and encyclopedias. Read safety rules, instructions in the use and maintenance of shop tools and equipment, and methods and procedures in mechanical drawing and layout work." *Id.* The job of surveillance system monitor also requires a specific vocational preparation time ("SVP") Level of 2. DOT § 379.367–010. Unskilled work corresponds under the regulations to an SVP of 1–2. 20 C.F.R. §§ 404.1568 and 416.968. When an ALJ evaluates a plaintiff's ability to perform work in the national economy and determines the requirements of potential work, "the regulatory definitions of skill levels are controlling." SSR 00–4p.

The Court does not agree with Plaintiff that his diagnosis of borderline intellectual functioning necessarily "rules out" work as a security systems operator. Although Plaintiff characterizes the degree of his diagnosis as "'severe' borderline intellectual function[ing]," Plaintiff's 2012 psychological evaluation does not characterize the diagnosis as "severe." (ECF 9–13 at 8, 24, 48.) Also, Plaintiff states that he has "marginal to 3rd grade reading and spelling (as determined by psychological testing and consistent with school records despite a high school diploma)." (ECF 15 at 3.) The 2012 psychological evaluation, however, states that Plaintiff "reads at about the 6th grade level" and his reading score fell "within the low average range and is somewhat better than one might predict based on his general level of intellectual functioning." (ECF 9–13 at 7–8.)

9

Based on this evidence, the Court rejects Plaintiff's assertion that substantial evidence does not support the ALJ's determination that Plaintiff could perform work as a security system operator. And in any event, as the magistrate judge correctly found, any error by the ALJ in determining that Plaintiff could perform work as a security system operator was harmless in light of the fact that the remaining four occupations required language and reasoning levels that were lower than those for a security system operator. Accordingly, the Court **OVERRULES** Plaintiff's second objection.

### III. CONCLUSION

For the reasons stated herein, the Court **OVERRULES** Plaintiff's objections to the PF&R (ECF 15), **ADOPTS** the PF&R to the extent it is consistent with this Opinion [ECF 14], **DENIES** Plaintiff's motion for judgment on the pleadings [ECF 10, 11, 12], **GRANTS** Defendant's motion for judgment on the pleadings [ECF 13], **DISMISSES** Plaintiff's Complaint [ECF 2], and **DIRECTS** the Clerk to remove this case from the Court's docket.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 29, 2014

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE